## Charles Sundmacher

### v.

## David J. Block et al.

*Innkeepers — Fraud on—Pleading — Evidence — Practice — Malicious Prosecution—Probable Cause—Trespass.*

1. An arrest by a private person without process is a trespass, if no criminal offense was committed or attempted in his presence, whether he had probable cause or not, to believe the person arrested guilty, and counts in trespass in the declaration in an action based thereon need not contain the averment that the alleged arrest was "without any reasonable or probable cause."

2. The rule that the proofs must correspond with the allegations in a declaration applies only to such as are material in themselves, or being immaterial, are yet so interwoven with what are material as to make the latter depend upon them and thus expose both to a traverse.

3. Under counts charging malicious prosecution, the burden is upon the plaintiff to prove a want of probable cause for a criminal prosecution.

4. A defendant should not in such case, there having been probable cause, suffer substantial damages although the manner of the original arrest was humiliating and offensive.

5. An action of trespass may be supported against a person, not being an infant or *feme covert*, who afterward assents to a trespass committed for his benefit.

6. Also against all who aided or abetted in committing the same.

7. No prosecution can be maintained under the act touching frauds upon innkeepers, for a refusal to pay for something which has not been "obtained."

[Opinion filed June 12, 1891.]

APPEAL from the Circuit Court of Sangamon County; the Hon. J. A. CREIGHTON, Judge, presiding.

Messrs. BROWN, WHEELER & BROWN, for appellant.

A private person can not justify an arrest upon the ground of suspicion of guilt only; guilt in such case must be shown. Dodds et al. v. Board, 43 Ill. 95; Kindred v. Stitt et al., 51 Ill. 401; Cooley on Torts, top page 201, 202.

There is no pretense that the defendants were officers or that any warrant had been issued when the arrest was made.

If the defendants sought to justify the arrest because a criminal offense had been committed in their presence, it was necessary for them to plead it; also, if they would justify the assault made upon the plaintiff, for the same reason they should have presented it by plea.   So far as this record discloses, the arrest of the plaintiff in the first instance was without authority of law, and the court clearly erred in refusing the 7th and 8th instructions asked for by the plaintiff.  Shanley v. Wells, 71 Ill. 78.

On the merits of the case, the verdict should have been against the defendants.   Passing all other questions, we contend that the plaintiff made out his case and sustained it by the weight of the evidence.   The arrest of the plaintiff was, as the evidence abundantly establishes, causeless and groundless.   He had committed no offense, and the effort of the defendants to collect the unjust and paltry demand by brute force and the employment of the power of the State under the guise of the criminal code, can surely find no sanction in a court of law.  Was there, or could there have been a reasonable suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the plaintiff was guilty of the offense charged?  Unless there was such a reasonable suspicion, there was no probable cause for his arrest.   Angelo v. Faul, 85 Ill. 106.

Whether the facts in proof constitute probable cause for commencing a criminal proceeding, is a question of law. Wade v. Walden, 23 Ill. 425.

Messrs. PATTON & HAMILTON, for appellees.

No rule of law is better settled than that in an action for a tort there can be no recovery against two or more tort feasors unless they are jointly liable for the tort complained of; all defendants sued together must be liable jointly, so that a joint judgment may be entered against all.   Shields v. McKee, 11 Ill. App. 188; Dalby v. Young, 3 Ill. App. 39.

Therefore the verdict was right and could not have been otherwise than what it was.  Because the evidence conclusively showed that the defendants, if liable at all, were not

liable jointly for either or both torts complained of, hence the verdict and judgment must have been for the appellees, even if both causes of action had been proven.

Again we suggest that it was impossible for the court to have given the 7th and 8th instructions asked by appellant.

The court instructed at appellant's instance that if the jury believe that the appellees maliciously and without probable cause arrested or caused the arrest and imprisonment of appellant, then appellees were liable. This instruction, we think, is bad, because there is no evidence to support it; but appellees are not complaining of it. But having given this instruction, how could the court, as against all the appellees, instruct that a recovery might be had against all of them if they arrested and detained the appellant or caused it to be done, without warrant, etc. Such instruction would have been erroneous, because there was no evidence to show that Block, Sr., had anything to do with the arrest or detention which took place, previous to the swearing out of the warrant. To have given the 7th and 8th instructions asked, would have authorized the jury to allow damages for a tort by Block, Jr., and Jones, and also damages for a distinct tort by Block, Sr., in the same suit. Daly v. Young, *supra.*

The complaint of the modification of appellant's 5th instruction is, we think, without foundation. As asked, it put appellee's liability wholly upon the ground that they did not believe in good faith that appellant was guilty. The court so modified it as to require that the appellees must have been actuated by malice. This was right. It is the settled doctrine of our Supreme Court that, in order to maintain an action for malicious prosecution, there must be both malice and want of probable cause. Both must concur; though malice may be inferred from want of probable cause, probable cause can not be inferred from malice. Mitchinson v. Cross, 58 Ill. 366; Leidig v. Rawson, 1 Scam. 272; Ross v. Innis, 35 Ill. 505; Chapman v. Cawrey, 50 Ill. 512.

Malice is not a legal presumption from the want of probable cause. It is for the jury to find from the facts, when there was no probable cause, whether there was malice or

not. The defendant in this class of actions may not be able
to show probable cause, but he may be able to rebut any pre-
sumption of malice. Hirschi v. Metteman, 7 Ill. App. 112;
Russell v. Deer, 7 Ill. App. 181.

In Hurd v. Shaw, 20 Ill. 350, the court say : " We are
inclined to the opinion that an action for a malicious prosecu-
tion, unless actual malice be proved, should not prevail in
any case where the merits have not been tried and a verdict
pronounced." See, also, Ross v. Innis, 26 Ill. 259; Wicker v. ·
Hotchkiss, 62 Ill. 107; Ames v. Snider, 69 Ill. 376; Anderson
v. Friend, 71 Ill. 479; Same v. Same, 85 Ill. 135.

In Splane v. Byrne, 9 Ill. App. 394, the court say : "To
constitute malice there must be something more than mere
spite or hatred; there must be *malus animus* showing that
the party is actuated by improper and indirect motives."

PLEASANTS, J. The facts out of which this suit arose
occurred on the 19th and 20th days of November, 1889,
during which the Grand Lodge of Odd Fellows was in session
at the city of Springfield. Appellees were respectively pro-
prietor, clerk and watchman of the Palace Hotel in that city.
Appellant, with two friends, all of Murphysboro, Ill., at-
tending the session, in the afternoon of the 19th applied to
the clerk for accommodations at the hotel and were regis-
tered and assigned to a room together. Appellant was
furnished with a card or ticket, as follows : " Hotel Palace;
meal and room ticket; C. H. Sundmacher; room 10; arrived
at supper the 19th; guests will please present this ticket at
dining room for meals and at office for key to room, and
return the same to the cashier on settlement of account." On
the back of it was the following: " Guests will be charged
full rates from the time of taking rooms, including meals
being served at the time of departure; no allowance made for
absence from meals." The other two gentlemen received
tickets differing only in the name of the guest. They had
supper and occupied the room that night. In the morning, a
few minutes after the dining room was open and guests were
going in, appellant went up to the counter in the office and ·

laid down a dollar, saying to the clerk that he wanted to pay for his supper and room, the regular charge for which was one dollar. His companions did the same. The clerk claimed that each should pay a half dollar more, being for breakfast. They said they hadn't had breakfast and didn't want it, and declined to pay for it. After some words back and forth they started out leaving the money on the counter. As they were leaving the clerk said he thought he would find a way to make them pay, or to that effect, and appellant replied, "very well, you'll find us at the State House." The clerk then called Jones, the watchman, and told him to stop those men; that they had refused to pay their bill. Jones followed them out to the sidewalk, and there, in front of the hotel, and in the presence of a large number of persons, arrested appellant and one of his companions. After a little he took his hand off the other, but with considerable force held appellant, who had made some show of resistance, against the wall of the building. Direction was given by somebody to send for the patrol wagon. In about ten or fifteen minutes it appeared with two policemen. Block, Jr., pointed out the two men to the policeman, and Jones told him to take them. The officer asked, "What have these men been doing?" and Block answered, "They refused to pay their bill, and we will appear against them when father gets up." Appellant was placed in the wagon and his companion followed. They were driven to the city jail or calaboose, searched and put in a cell.

The elder Block had not arisen when these occurrences took place. On coming down from his room and learning of them in a general way, between seven and eight o'clock, he went to the calaboose to see them. He says he asked them if they were Odd Fellows, and being told they were, said he was very sorry this thing occurred; sorry he was not up; that if he had been, he didn't think it would have happened. "I said, 'We have a different way of settling matters,' and this gentleman (referring to appellant) spoke up in a very pompous kind of way and says, 'We don't propose to talk about this matter at all; I am a lawyer and know my rights; all we want

is counsel and would like to see Judge Allen;' and I said 'Gentlemen, if that is all, that is all right.' And I turned to Mr. Alyea and says, ' be kind enough to extend to these gentlemen any courtesy you can,' and I walked out and went over to the squire's office, thinking that was the best thing I could do to protect my son and house from further trouble; and to show I had some cause for this arrest, I swore out a warrant." On cross-examination he stated that when he made the complaint he did not know they had paid for supper and lodging and didn't want any breakfast; and that he told the magistrate not the particulars but simply that they had refused to pay their bill. On his return to the hotel he learned the facts. And further, "I went there (to the calaboose) in the spirit of an Odd Fellow to help them out, and after I saw the vindictive spirit manifested by that fellow, both as a Mason and Odd Fellow, I concluded I would go right over and swear out a warrant and protect myself. I saw he was vindictive, that was his spirit, and I took the initiatory step."

The warrant was served and appellant taken before the magistrate about half past nine o'clock. They wanted an immediate hearing, but Mr. Block was on the Odd Fellows' reception committee, preparing for a parade, very busy otherwise and had no attorney. The hearing was postponed to the afternoon, the prisoners being discharged in the meantime on their own recognizance. In the afternoon the complaint was heard, occupying several hours. Each of the appellees and several other witnesses testified, and the prisoners were discharged.

Appellant thereupon brought this suit. The declaration was in four counts—two in case, for malicious prosecution upon the charge of obtaining food, lodging and accommodations from the Palace Hotel, with intent to defraud the keeper thereof, and two in trespass, charging that defendants, on, etc., at, etc., with force and arms made an assault upon the plaintiff, and seized and laid hold of him, and compelled him to enter the police patrol wagon, and to go to police headquarters, and there imprisoned him, and kept and detained him there " without any reasonable or probable

cause," for a long space of time, to wit, twelve hours, against the peace of the people of this State.

"Not guilty," was the only plea interposed; upon which a trial was had, resulting in a verdict for the defendants. A motion for a new trial was overruled and judgment entered upon the verdict against the plaintiff. Exceptions were duly taken.

The theory of the case as presented on behalf of appellees is, that appellant, by his pleading, assumed the burden of proving a want of probable cause for the original arrest, carriage to and detention at the city prison, being the wrong complained of in the trespass counts, as well as for the prosecution on the warrant afterward sworn out; that whether there was or was not a want of probable cause was a question for the jury; that the evidence was sufficient to support a finding that there was no want of probable cause for the alleged wrongs, and also that the evidence failed to show a joint liability of the defendants for the acts set forth in either of the counts, but on the contrary positively proved, that even if they had been wrongful, Block, Sr., was not liable for the original arrest, nor the other defendants for the prosecution on the warrant.

It is conceded that the counts in trespass would have been just as complete, good and sufficient statements of the cause of action, without the averment that the alleged arrest was "without any reasonable or probable cause." Having been made by private persons without process, it was a trespass, if no criminal offense had been in fact committed or attempted by appellant in their presence, whether they had or had not probable cause to believe him guilty. Sec. 342, Chap. 38, R. S.; Kindred v. Stitt, 51 Ill. 401; Dodds v. Board, 43 Id. 95. The want of probable cause was not an element of the wrong, nor of essential description of it, but at most of aggravation only, and its existence would have been no justification to defendants. The averment was therefore unnecessary. Defendants could not properly traverse it, nor was plaintiff bound to prove it. Stephens on Pleading, side pp. 217–41–43; Chap. 1., Pl., side p. 229, 611–12; Burnap. v. Wight, 14

Ill. 301; Quincy Coal Co. v. Hood, 77 Id. 72. The rule that the proofs must correspond with the allegations applies only to such as are material in themselves, or, being immaterial, are yet so interwoven with what are material as to make the latter depend upon them and thus expose both to a traverse. Here the statement of the cause of action is not at all interwoven with or dependent upon the allegation in question. It may be stricken out entirely, as surplusage, without impairing or changing the legal effect of these counts. 1 Greenl. on Evidence, Sec. 51, and authorities, *supra*.

It is said that by the instructions given for him, appellant was committed to the proposition that the maintenance of his case under those counts required proof on his part of the want of probable cause for his arrest. And it is true that these instructions do not all in terms distinguish the counts in trespass from those in case. We think, however, that of those referred to, the second, third and sixth are applied with sufficient clearness to the latter only. But appellant should not be estopped by the others, if their application also was made clear by instructions refused. The fifth and seventh as asked did in terms apply to the arrest without process, and exclude the want of probable cause as an element of the wrong therein stated. Had they been given, it would have been clear that those which included it referred only to the counts in case. Appellant is therefore not estopped to complain of their refusal, if they stated the law correctly. That they did is hardly denied.

Nor is any reason perceived for refusing the ninth. And so, also, as to the tenth, since the third given, which defined probable cause in substantially the same way, did not state the charge in question to which it applied and which might have materially aided the jury in understanding the definition.

But we have not thought any of these questions relating to the counts in trespass of sufficient importance in this case to demand a very careful consideration. It is agreed that under the others the burden was upon appellant to prove a want of probable cause for the criminal prosecution. If he failed to

prove it, if there was probable cause, then the wrong of the original arrest and detention was more technical than substantial. It was really the beginning of the prosecution, and although the manner of it was very humiliating and offensive, yet if the prosecution was not without probable cause the defendants should not suffer substantial damages. But the main reason is that however these questions should be decided, if it were clear that by the law or under the pleading the burden of showing a want of probable cause for the original arrest was also upon the plaintiff, he did show it beyond a reasonable doubt. On this question the evidence is all one way. The testimony of the defendants alone was conclusive, showing it to be a moral certainty. Not a single circumstance appears which tends in the least degree to the contrary.

It happens in this case, as it rarely does where this question is involved, that every fact needful to its determination is proved and undisputed. Usually there is a want or a conflict of evidence, or it is circumstantial and inconclusive as to some facts to be found in order to determine whether the offense charged was committed, or the party charged committed it, and as to which an inference or conclusion either way might not be unreasonable; or the defendant may have been excusably ignorant of some material fact. In such cases the question of probable cause is one of fact for the jury to find. Not so here. The facts upon which it was to be determined whether the offense charged had been committed were all so known, and of such a character as to present to the defendants only a question of law; and since this so appeared on the trial, the same question was there presented. If these facts were known to the defendants and showed that it had not been committed, they could not have had probable cause for the arrest and prosecution of the plaintiff. If they were ignorant of the terms of the law, or mistaken in their opinion of its meaning, that was their misfortune if not their fault, of which they and not the plaintiff should bear the consequences.

The statute under which the prosecution was instituted is as follows:

"Sec. 1. Be it enacted," etc., "that any person who shall obtain food, lodging or other accommodation at any hotel, inn, boarding or eating house, with intent to defraud the owner or keeper thereof, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by a fine not exceeding $100, or imprisonment in the county jail not exceeding thirty days.

"Sec. 2. Proof that lodging, food or other accommodation was obtained by false pretense * * * or that the party refused or neglected to pay for such food, lodging or other accommodation on demand * * * shall be *prima facie* proof of the fraudulent intent mentioned in section one of this act." Sec. 155 a, 155 b, pp. 480–1, Chap. 38, Hurd's R. S., 1889.

The accommodation in question, on account of which appellant was arrested and prosecuted, was breakfast on the morning of November 20, 1889. That is proved, admitted and certain. No claim was or is made in respect to any other. And it is just as fully proved, admitted and certain that he did not "obtain" it; that the defendants who ordered and made the original arrest then knew he had not "obtained" it; and that the defendant who afterward swore out the warrant further prosecuted his complaint after he also knew it. It is even conceded that these proceedings against him were begun and continued because he refused to obtain it and therefore refused to pay the fifty cents demanded for it.

To "obtain" is "to get hold of," to "obtain possession of," "to acquire," to "maintain a hold upon," to "keep," to "possess." To contract for, does not approach it in meaning. (Webster's Dictionary.)

And yet it is said the jury were warranted by the evidence in finding that there was probable cause for the arrest and prosecution under this statute, and that the court did not err in refusing to set aside that finding.

The clerk testified that when they applied for a room he asked appellant how long they were going to remain, and he answered that he was not positive, but he would be there until after breakfast, and the other two men would remain

during the session of the grand lodge. Appellant and his companion, Watson, the only other witnesses to that point, relate appellant's statement as to himself differently, as having been that he was going away at six o'clock, or early in the morning, without reference to breakfast. But if his statement was as given by the clerk, the fact remains that he did not obtain the breakfast. Nor can it be held that there was a contract, as to either, that he would positively remain for any definite time. They were transients, whose present purposes in that regard, though stated as represented, would not be contracts for the time mentioned, but lawfully changeable at their option for any reason thereafter arising. Nor, if they were contracts would it affect the question under consideration. This statute is not to be extended by any liberality of construction in favor of innkeepers; and we hold that in no proceeding under it is the civil liability of the guest for any accommodation not actually "obtained" at all pertinent. If he definitely contracted to remain for a week, and left without fault of the innkeeper, at the close of the first day, paying or tendering payment for all that he had actually obtained, evidence of his refusal to pay for the further time contracted for would not be admissible as tending to prove an offense, or probable cause for a prosecution, under this act. Nor should the jury be permitted, upon either of those issues, to consider whether or not the accommodation actually obtained was better, in view of what was further contracted for, than it otherwise would have been, if payment for it was made or tendered according to its actual value or regular price. The innkeeper will not be allowed to claim that if he had understood the guest was to remain only a day instead of a week, he would or might have been furnished a meaner room, any more than that there would or might have been less of benignity in the smiles of the clerk or of alacrity in the responses of bell boys or the movements of table waiters. Having peculiar rights they are subject to peculiar obligations.

Upon the remaining question we are of opinion that all of the defendants were liable for both the original arrest and the subsequent prosecution.

As to the original arrest, David J. Block, Jr., ordered it and Jones made it. It is elementary law that this action "may be supported against a person, not being an infant or *feme covert*, who afterward assents to a trespass committed for his benefit." 1 Chitty on Pl., side p. 180. It was made for the benefit of Block, Sr., and if he did not assent to it we do not know what would amount to an assent.

As showing that he did not, it is said that at the calaboose he expressed to the prisoners his regret at what had occurred. Had this been on account of an admitted wrong to them, it was wholly in his power to right it so far as that could be done by having them at once discharged, and was a concession of the propriety of appellant's insistence on having counsel. His regret was not expressed until he had ascertained what he probably already had some reason to suppose, that they were Odd-Fellows—and from his own statement there appears to have been no occasion for his regret except that they had committed a crime and that it reflected upon the order; for he had been informed and believed that they had obtained food and lodging at his hotel and refused, without reason, to pay their bills. Even in this view it is difficult to refrain from smiling at the queer picture he presents of himself. This intended victim of their fraud, indignant at their vindictiveness and impudence in threatening to have a lawyer, bespeaking of the calaboose keeper his extension to "these gentlemen" of all possible courtesies, and hurrying off to swear out a warrant against them. But if his intention when he went to the calaboose was really to repudiate the act of his son and watchman, he then changed it. He "walked out and went over t the squire's office, thinking that was the best thing he could do *to protect* his son and house from further trouble; and to show that he had some cause for this arrest, he swore out a warrant." Such is his own testimony. After doing this and learning the facts of the case more fully, he employed counsel, produced witnesses, including his son and his watchman, and prosecuted his complaint. It is idle to contend that this was not an assent to and a ratification and adoption of their acts. It is equally

clear that they took part, as aiders and abetters, in the prosecution. They ordered and made the arrest for the purpose of prosecuting. The son told the policeman who took the plaintiff to the calaboose, in the presence of the watchman, that they would appear against him when his father got up. This was their own expression of their own purpose, before they had conferred with his father about it; and they did so appear.

We think the verdict was not only unsupported by any evidence whatever, but was clearly contrary to it and to the law, and should have been set aside. The judgment will therefore be reversed and the cause remanded.

*Reversed and remanded.*